UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TAMPA
FORT MEYERS DIVISION

MARY RHEA,

    Plaintiff,

-VS-                            CASE NO.:

CHECKSMART FINANCIAL, LLC;
BUCKEYE CHECK CASHING OF
FLORIDA, LLC and COMMUNITY
CHOICE FINANCIAL, INC.

    Defendant.
_____/

## COMPLAINT

COMES NOW Plaintiff, Mary Rhea, by and through the undersigned counsel, and sues Defendants, CHECKSMART FINANCIAL, LLC; BUCKEYE CHECK CASHING OF FLORIDA, LLC and COMMUNITY CHOICE FINANCIAL, INC., and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA").

## INTRODUCTION

1.    The TCPA was enacted to prevent companies like COMMUNITY CHOICE FINANCIAL, INC. from invading American citizen's privacy and prevent abusive "robo-calls."

2. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, -US--, 132 S.Ct., 740, 745, 181, L.Ed. 2d 881 (2012).

3. "Senator Hollings, the TCPA's sponsor, described these calls as 'the **\*1256** scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.'" 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

4. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet:  Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, Federal Communications Commission, (May 27, 2015), http://transition.fcc.gov/Daily_Releases/Daily_Business/2015/db0527/DOC-333676A1.pdf.

## JURISDICTION AND VENUE

5. This is an action for damages exceeding Seventy-Five Thousand Dollars ($75,000.00) exclusive of attorney fees and costs.

6. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

7. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014)

8. The alleged violations described herein occurred in Charlotte County, Florida. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2) as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

9. Plaintiff is a natural person, and citizen of the State of Florida, residing in Charlotte County, Florida

10. Plaintiff is a "consumer" as defined in Florida Statute § 559.55(8).

11. Plaintiff is an "alleged debtor."

12. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

13. Defendant, CHECKSMART FINANCIAL, LLC (hereinafter referred to as "CHECKSMART"), is a corporation which was formed in Delaware with its principal place of business located at 6785 Bobcat Way, Suite 200, Dublin, Ohio 43016 and which conducts business in the State of Florida through its registered agent, Corporation Service Company located at 1201 Hay Street, Tallahassee, Florida 32301.

14. Defendant, BUCKEYE CHECK CASHING OF FLORIDA, INC. (hereinafter referred to as "BUCKEYE"), is a corporation which was formed in Ohio with its principal place of business located at 6785 Bobcat Way, Suite 200, Dublin, Ohio 43016 and which conducts business in the State of Florida through its registered agent, Corporation Service Company located at 1201 Hay Street, Tallahassee, Florida 32301.

15. Defendant, COMMUNITY CHOICE FINANCIAL, INC. (hereinafter referred to as "COMMUNITY", is a corporation which was formed in Ohio with its principal place of business located at 6785 Bobcat Way, Suite 200, Dublin, Ohio 43016 and whose registered agent is Mercury Agent Company, 250 West Street, Suite 700, Columbus, Ohio 43215.

16. Defendants, CHECKSMART, BUCKEYE and COMMUNITY, share their principal place of business, and upon information and belief, are related entities.

17. Defendant, COMMUNITY, is the parent company of Defendants BUCKEYE and CHECKSMART.

18. The debt that is the subject matter of this Complaint is a "consumer debt" as defined by Florida Statute §559.55(6).

19. CHECKSMART, BUCKEYE and COMMUNITY are "creditors" as defined in Florida Statute §559.55(5).

20. Plaintiff is the subscriber, regular user and carrier of the cellular telephone number (937) ***-8517, and was the called party and recipient of Defendant's calls.

21. CHECKSMART, BUCKEYE and COMMUNITY placed an exorbitant number of automated calls to Plaintiff's cellular telephone (937) ***-8517 in an attempt to reach an individual known only as Brandon Liptor.

22. Plaintiff does not currently know, nor has ever known, an individual by the name of Brandon Liptor.

23. Plaintiff does not currently have any account or business dealings with CHECKSMART, BUCKEYE and/or COMMUNITY.

24. On several occasions over the last four (4) years, Plaintiff instructed CHECKSMART, BUCKEYE and COMMUNITY's agent(s) to stop calling her cellular telephone.

25. Shortly after the calls began, Plaintiff returned a call and spoke with a female agent who refused to identify herself, but did confirm that Plaintiff had called CHECKSMART. At this time Plaintiff informed the agent that they had the wrong number and asked that they stop calling. The Agent continued asking for a "Brandon" and demanded Plaintiff's full name, date of birth and social security number before she could/would proceed. When Plaintiff refused, the Agent hung-up.

26. Upon receipt of the calls from Defendants, Plaintiff's called ID identified the calls were being initiated from, but not limited to, the following phone numbers:

(866) 354-0567, (916) 228-1231 and (619) 284-2238, when those numbers are called, a pre-recorded message answers "Thank you for calling the Corporate Office. . .", after pressing "0" to be connected to the next available operator, a live agent picks up and identifies the number as belonging to Community Choice Financial, LLC.

27. Upon information and belief, some or all of the calls the Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that she knew it was an autodialer because of the vast number of calls she received and because she heard a pause when she answered her phone before a voice came on the line and she received prerecorded messages from CHECKSMART, BUCKEYE and COMMUNITY.

28. Furthermore, some or all of the calls at issue were placed by the Defendants using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. §227(b)(1)(A).

29. CHECKSMART, BUCKEYE and COMMUNITY have a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as it did to Plaintiff's cellular telephone in this case.

30. CHECKSMART, BUCKEYE and COMMUNITY have a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice just as it

did to Plaintiff's cellular telephone in this case, with no way for the consumer, Plaintiff, or Defendants, to remove the number.

31. CHECKSMART, BUCKEYE and COMMUNITY's corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to Defendants they wish for the calls to stop.

32. CHECKSMART, BUCKEYE and COMMUNITY have numerous other federal lawsuits pending against it alleging similar violations as stated in this Complaint.

33. CHECKSMART, BUCKEYE and COMMUNITY hav numerous complaints across the country against it asserting that its automatic telephone dialing system continues to call despite requested to stop.

34. CHECKSMART, BUCKEYE and COMMUNITY have had numerous complaints from consumers across the country against it asking to not be called; however, Defendant continues to call the consumers.

35. CHECKSMART, BUCKEYE and COMMUNITY's corporate policy provided no means for Plaintiff to have her number removed from Defendants' call list.

36. CHECKSMART, BUCKEYE and COMMUNITY have a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

37. Not a single call placed by CHECKSMART, BUCKEYE and/or COMMUNITY to Plaintiff were placed for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

38. CHECKSMART, BUCKEYE and COMMUNITY willfully and/or knowingly violated the TCPA with respect to Plaintiff.

39. From each and every call placed without consent by CHECKSMART, BUCKEYE and COMMUNITY to Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon her right of seclusion.

40. From each and every call without express consent placed by CHECKSMART, BUCKEYE and COMMUNITY to Plaintiff's cell phone, Plaintiff suffered the injury of occupation of her cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from CHECKSMART, BUCKEYE and COMMUNITY's calls.

41. From each and every call placed without express consent by CHECKSMART, BUCKEYE and COMMUNITY to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of her time. For calls she answered, the time she spent on the call was unnecessary as she repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

42. Each and every call placed without express consent by CHECKSMART, BUCKEYE and COMMUNITY to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to Plaintiff. For calls that were answered, Plaintiff had to go to

the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

43. Each and every call placed without express consent by CHECKSMART, BUCKEYE and COMMUNITY to Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cell phone's battery power.

44. Each and every call placed without express consent by CHECKSMART, BUCKEYE and COMMUNITY to Plaintiff's cell phone where a voice message was left which occupied space in Plaintiff's phone or network.

45. Each and every call placed without express consent by CHECKSMART, BUCKEYE and COMMUNITY to Plaintiff's cell phone resulted in the injury of a trespass to Plaintiff's chattel, namely her cellular phone and her cellular phone services.

46. As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affect in a personal and individualized way by stress, anxiety, embarrassment, and aggravation.

## COUNT I
**(Violation of the TCPA by Defendant, Checksmart, LLC)**

1. Plaintiff fully incorporates and re-alleges paragraphs one (1) through forty-six (46) as if fully set forth herein.

2. CHECKSMART FINANCIAL, LLC willfully violated the TCPA with respect to Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular

.

telephone after Plaintiff notified CHECKSMART FINANCIAL, LLC that she wished for the calls to stop.

3. CHECKSMART FINANCIAL, LLC repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against CHECKSMART FINANCIAL, LLC for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT II
### (Violation of the FCCPA by Defendant, Checksmart Financial, LLC)

4. Plaintiff fully incorporates and realleges paragraphs one (1) through forty-six (46) as if fully set forth herein

5. At all times relevant to this action CHECKSMART FINANCIAL, LLC is subject to and must abide by the laws of the State of Florida, including Florida Statute § 559.72.

6. CHECKSMART FINANCIAL, LLC has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of his or her family with such frequency as can reasonably be expected to harass the debtor or his or her family.

7. CHECKSMART FINANCIAL, LLC has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of his or her family.

8. CHECKSMART FINANCIAL, LLC has violated Florida Statute § 559.72(9) by attempting to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such person knows the right does not exist.

9. CHECKSMART FINANCIAL, LLC's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute § 559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against CHECKSMART FINANCIAL, LLC for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

### COUNT III
**(Violation of the TCPA by Defendant, Buckeye Check Cashing of Florida, LLC)**

1. Plaintiff fully incorporates and re-alleges paragraphs one (1) through forty-six (46) as if fully set forth herein.

2. BUCKEYE CHECK CASHING OF FLORIDA, LLC willfully violated the TCPA with respect to Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified BUCKEYE CHECK CASHING OF FLORIDA, LLC that she wished for the calls to stop.

3. BUCKEYE CHECK CASHING OF FLORIDA, LLC repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against BUCKEYE CHECK CASHING OF FLORIDA, LLC for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

### COUNT IV
### (Violation of the FCCPA by
### Defendant, Buckeye Check Cashing of Florida, LLC)

4. Plaintiff fully incorporates and realleges paragraphs one (1) through forty-six (46) as if fully set forth herein

5. At all times relevant to this action BUCKEYE CHECK CASHING OF FLORIDA, LLC is subject to and must abide by the laws of the State of Florida, including Florida Statute § 559.72.

6. BUCKEYE CHECK CASHING OF FLORIDA, LLC has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of his or her family with such frequency as can reasonably be expected to harass the debtor or his or her family.

7.  BUCKEYE CHECK CASHING OF FLORIDA, LLC has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of his or her family.

8.  BUCKEYE CHECK CASHING OF FLORIDA, LLC has violated Florida Statute § 559.72(9) by attempting to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such person knows the right does not exist.

9.  BUCKEYE CHECK CASHING OF FLORIDA, LLC's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute § 559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against BUCKEYE CHECK CASHING OF FLORIDA, LLC for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT V
### (Violation of the TCPA by Defendant, Community Choice Financial, Inc.)

10.  Plaintiff fully incorporates and re-alleges paragraphs one (1) through forty-six (46) as if fully set forth herein.

11.  COMMUNITY CHOICE FINANCIAL, INC. willfully violated the TCPA with respect to Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified COMMUNITY CHOICE FINANCIAL, INC. that she wished for the calls to stop.

12. COMMUNITY CHOICE FINANCIAL, INC. repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against COMMUNITY CHOICE FINANCIAL, INC. for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT VI
### (Violation of the FCCPA)

13. Plaintiff fully incorporates and re-alleges paragraphs one (1) through forty-six (46) as if fully set forth herein

14. At all times relevant to this action COMMUNITY CHOICE FINANCIAL, INC. is subject to and must abide by the laws of the State of Florida, including Florida Statute § 559.72.

15. COMMUNITY CHOICE FINANCIAL, INC. has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of his or her family with such frequency as can reasonably be expected to harass the debtor or his or her family.

16. COMMUNITY CHOICE FINANCIAL, INC. has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of his or her family.

17.     COMMUNITY CHOICE FINANCIAL, INC. has violated Florida Statute § 559.72(9) by attempting to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such person knows the right does not exist.

18.     COMMUNITY CHOICE FINANCIAL, INC.'s actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute § 559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against COMMUNITY CHOICE FINANCIAL, INC. for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

*/s/Frank H. Kerney, III, Esquire*
Frank H. Kerney, III, Esquire
Florida Bar #: 88672
Morgan & Morgan, Tampa, P.A.
One Tampa City Center
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile:  (813) 223-5402
fkerney@forthepeople.com
jkneeland@forthepeople.com
mbradford@forthepeople.com
Counsel for Plaintiff